IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
AT ROCK ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal No. 07-40094 |
| ) | |
| TIMOTHY AARON BROWN, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby responds to defendant Brown's Motion To Suppress Evidence.

Brown claims that (1) the initial stop of his vehicle by Illinois State Police (ISP) was without justification, (2) the stop was unreasonable in duration due to questioning unrelated to the purposes of the stop, (3) the search of the car was without probable cause, and (4) the statements made by Brown to agents were obtained in violation of his Fifth Amendment rights.

Each of these contentions is unavailing and should be rejected. *First,* Brown lacks standing to raise these claims because he was an unauthorized driver of a rental vehicle. *Second*, Brown was lawfully stopped because the trooper had probable cause to believe the defendant was committing a traffic violation – speeding. *Third*, after the traffic stop was concluded, Brown consented to the canine sniff of his car. *Fourth*, a positive canine alert provided probable cause for the search of Brown's vehicle. *Finally*, Brown was advised of his *Miranda* rights and his statements to agents were voluntary.

I.      **FACTUAL BACKGROUND**

Brown is charged in this case with possession of approximately 18 kilograms of cocaine with intent to distribute.

On September 23, 2007, at approximately 8:35 a.m., ISP Trooper Fratzke observed Brown's car, a GMC Acadia with Ohio license plates, speeding near milepost 19, eastbound on I-80. Trooper Fratzke first paced the car at a rate of 68 mph. Trooper Fratzke then clocked Brown's car speeding at a rate of 70 mph with radar. The posted speed limit was 65 mph.

Trooper Fratzke initiated a traffic stop, approached the Acadia, and explained to the driver and sole occupant, Brown, why he stopped him. Brown handed Trooper Fratzke his Ohio driver's license and provided the rental agreement listing A.B. as the renter, and only authorized driver, of the Acadia. The Acadia was rented in Ohio on September 17, 2007 and was to be returned to Ohio seven days later on September 24, 2007. Brown advised that his girlfriend in Ohio had rented the car for him.

Brown informed Trooper Fratzke that he was returning from Las Vegas where he had spent a couple days. Trooper Fratzke asked Brown why he drove from Ohio to Las Vegas instead of flying. Brown advised that he liked to drive. Trooper Fratzke observed three cellular telephones in the cup holder of the car and smelled an overwhelming odor of fabric softener.

Trooper Fratzke went back to his vehicle and conducted a driver's license and criminal history check. The check revealed that Brown had a prior conviction for cocaine trafficking in 2001. Trooper Fratzke then wrote Brown a written warning for speeding. He then approached the front passenger window of the car and noticed there was now only one cellular telephone in the cup holder. Trooper Fratzke had Brown step to the front of the car to have him sign the warning.

Trooper Fratzke explained the written warning and gave the warning to Brown. Brown signed the warning and was given all of his documents back.

Trooper Fratzke then asked Brown why he drove three days to Las Vegas only to spend less than two days there. Brown replied that he likes to drive. Trooper Fratzke then asked Brown if he could walk his dog around the car. Brown replied ok. Trooper Fratzke also asked Brown if he had anything illegal in the car, and Brown replied "no."

Trooper Fratzke conducted a free-air sniff of the vehicle using his drug-detecting dog, Viper. Viper gave a positive alert to the odor of narcotics in the rear of the car. Trooper Fratzke then advised Brown that the positive alert provided him probable cause to search the car. Trooper Fratzke opened the back hatch of the car and located approximately 18 kilo-size bricks of cocaine covered with fabric softener sheets. Trooper Fratzke approached Brown at the front of the car and noticed that Brown already had his hands behind his back. Trooper Fratzke placed Brown under arrest and advised him of his *Miranda* rights at approximately 8:50 a.m. Brown advised that he understood his rights. Approximately ten minutes later, Fratzke again reminded Brown of his *Miranda* rights while he was seated in the squad car and Brown once again confirmed that he understood his rights.

Brown was transported to the Geneseo Police Department where he met with ISP agents Seas, Thatcher and Kuehl at approximately 9:45 a.m. Brown advised agents that he was traveling from Los Angeles to Ohio and was responsible for transporting the cocaine which was seized from his car.

## II. ARGUMENT

### A. Brown Lacks Standing to Challenge the Search of the Car

The Fourth Amendment's protection against illegal searches and seizures is a personal right that can only be invoked by the individual whose rights are violated. *United States v. Swift,* 220 F3d 502, 510 (7th Cir. 2000). An individual who feels aggrieved by improper government conduct bears the burden of establishing "standing," *i.e.*, a legitimate expectation of privacy in the area or object searched. *United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994).

With respect to standing to contest the search of an automobile, the defendant must establish that he had a reasonable expectation of privacy in the car he was driving at the time of the search. *United States v. Jackson*, 189 F.3d 502, 508 (7th Cir. 1999). The Seventh Circuit has yet to decide whether an unauthorized driver of a rental car has standing, but has held that an unlicensed unauthorized driver of a rental car, regardless if he has permission from an authorized user, lacks standing to challenge a search of that vehicle. *United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003).

Several circuits have examined the issue of whether an unauthorized driver has standing to challenge a search, though they have failed to reach a consensus. The Fourth, Tenth, and Eleventh Circuits have looked solely to the rental agreement, holding that a driver who is not authorized by the rental company to operate the car does not have standing. See *United States v. Wellons*, 32 F.3d 117 (4th Cir.1994); *United States v. Roper*, 918 F.2d 885 (10th Cir.1990); *United States v. McCulley*, 673 F.2d 346 (11th Cir.1982). The Fifth and Eighth Circuits, on the other hand, have held that an unauthorized driver of a rental car has standing as long as the authorized driver has given him permission to drive the car. See *United States v. Best*, 135 F.3d 1223 (8th Cir.1998); *United States*

4

*v. Kye Soo Lee*, 898 F.2d 1034 (5th Cir.1990). Finding a middle ground, the Sixth Circuit has applied a more fact-based approach. See *United States v. Smith*, 263 F.3d 571, 586 (6th Cir.2001) (court created presumption that an unauthorized driver does not have standing but defendant overcame presumption because he was married to the authorized driver, was a licensed driver, and had paid for the rental).

  The rental car belonged to the rental company, who had agreed to let Brown's girlfriend, and no one else, drive it. Brown had no legal right to even drive the rental car, let alone exercise any sort of possessory interest over it, or claim an expectation of privacy in it. In that sense, he is akin to the driver of a stolen vehicle, who has no standing to object to a search of someone else's vehicle. *United States v. Garcia,* 897 F.2d 1413, 1417 (7th Cir. 1990). Although Brown may argue he has a subjective expectation of privacy, it is not an expectation that society recognizes as legitimate and reasonable. Because he was an unauthorized driver of the car, Brown does not have an objectively reasonable expectation of privacy in the car and therefore lacks standing to challenge a search of the car on Fourth Amendment grounds.

  B. <u>The Initial Traffic Stop Was Lawful</u>

  Lebon's initial claim, that the traffic stop was unlawful, has no merit because he was stopped after Trooper Fratzke witnessed a violation of the Illinois Vehicle Code, specifically speeding. 625 ILCS 5/11-601. "[A] traffic violation – however minor – creates probable cause to stop the driver of a vehicle." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002). There is no doubt that based upon Trooper Fratzke's observation of Brown's car speeding, which he confirmed with pacing and radar, he was authorized to stop the driver for improper lane usage. *United States v. Fiala*, 929 F2d 285, 288 (7th Cir. 1991)(troopers were authorized to stop vehicle for traffic violation).

### C. The Defendant Was Not Unlawfully Detained

The defendant was stopped on probable cause that he had committed a traffic violation, speeding. The entire traffic stop took no longer than 15 minutes. As soon as Trooper Fratzke completed processing the written warning, he returned Brown's documents to him and asked him two more questions. Trooper Fratzke asked Brown why he drove such a long distance to Las Vegas for such a brief stay instead of flying. He then asked Brown if he would mind if he ran his dog around the car and Brown replied ok. This entire exchange took less than two minutes. The traffic stop and resulting detention was over, but the defendant voluntarily agreed to allow Fratzke to run his dog around the car.

Not every encounter between citizens and police involves a seizure that implicates the Fourth Amendment: "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (en banc) (*quoting Florida v. Bostick*, 501 U.S. 429, 434 (1991)); *United States v. Broomfield*, 2005 WL 1791307 at *2 (7th Cir. July 29, 2005). "[T]he law is well established that if an officer asks rather than commands, the person accosted is not seized, and so the protections of the Fourth Amendment do not attach." *United States v. Stribling*, 94 F.3d 321, 323-24 (7th Cir. 1996) *(quoting United States v. DeBerry*, 76 F.3d 884, 885 (7th Cir. 1996)); *see also United States v. Moore*, 375 F.3d 580, 584 (7th Cir. 2004).

Because the stop was completed and the defendant agreed to allow Fratzke to conduct the free-air sniff of the car, the encounter between the two was a consensual encounter that does not trigger Fourth Amendment scrutiny.

Though the discussion between the defendant and Fratzke after the conclusion of the traffic stop was a purely consensual encounter beyond Fourth Amendment scrutiny, even if it were not, and as the defendant claims he was still being detained, the brief additional time - less than two minutes - until Fratzke located the cocaine was not unreasonable.

Brown does not specify which questions he finds objectionable, but presumably he complains about Fratzke's questions concerning the trip itinerary. This complaint is without legal merit, since it is well established that the defendant need not be released at the earliest practicable moment after the completion of a traffic stop for his detention to be reasonable under the Fourth Amendment. In *United States v. Childs*, 277 F.3d 947 (7th Cir.), *cert. denied*, 537 U.S. 829 (2002)*,* the Seventh Circuit considered whether a police officer could reasonably extend the duration of the stop by asking questions during a traffic stop based upon probable cause. This Court found that questions were neither a search or a seizure, and held that the "custody's . . . duration must be 'reasonable' under the fourth amendment." 277 F.3d at 952. "[A]rrested persons (unlike those stopped at checkpoints, or on reasonable suspicion) need not be released as quickly as possible." *Id*. at 953.

The *Childs* court also stated that "because probable cause supported this stop, neither the driver nor Childs [the passenger] had a right to be released the instant the steps to check license, registration and outstanding warrants, and to write a ticket had been completed." *Childs* at 277 F.3d at 953. The *Childs* court also found that the minute or so added to the minimum time in which those steps were accomplished "was short - not nearly enough to make the seizure 'unreasonable.'" *Id*.

> What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public -- for all suspects (even the

> guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

*Id*. at 954.

In *United States v. Carpenter*, 406 F.3d 915 (7th Cir. 2005), the Seventh Circuit again emphasized the holding in *Childs* – when a traffic stop is made with probable cause, the issue is whether the overall detention is reasonable. In *Carpenter*, the defendant had been stopped on probable cause for running a red light. There was a dispute between the parties about whether a drug dog did a free air sniff during the processing of the traffic ticket, or whether the wait for the dog prolonged the stop by around 5 minutes. The Seventh Circuit held that, even if the defendant had been detained for 5 minutes beyond the conclusion of the traffic stop to await the arrival of a drug-detecting dog, it was a "modest incremental delay for a person already lawfully arrested [, and] cannot be called unreasonable . . . ." *Carpenter* at 917.

Not only were Trooper Fratzke's questions of the type specifically allowed by law, any alleged delay was less than two minutes, and thus not unreasonable by Fourth Amendment standards.

    D.    <u>Viper's Positive Indication for the Presence of Narcotics Gave Fratzke Probable Cause to Search the Car</u>

When Viper alerted to the odor of narcotics, Fratzke had probable cause to believe there were narcotics in the car, such that he had probable cause to search the vehicle, whether the defendant consented or not. *See United States v. Carpenter,* 406 F.3d 915, 916 (7th Cir. 2005) (drug-detecting dog's alert provided probable cause to search car for drugs); *United States v. Rogers*,

387 F.3d 925, 934 n.9 (7th Cir. 2004) (same); *United States v. Thomas*, 87 F.3d 909, 912 (7th Cir. 1996) (drug-detecting dog's positive alert establishes probable cause).[1]

Under the *Carroll* doctrine, or automobile exception to the Fourth Amendment, the diminished expectation of privacy one has in one's automobile, and the fact that vehicles are readily moveable, means that officers may search a vehicle without a warrant if they have probable cause to believe it contains evidence or contraband. *California v. Carney*, 471 U.S. 386, 390-91 (1985); *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996); *United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994).

E. <u>The Defendant's Statements were Voluntary and he was Advised of his Fifth Amendment Rights</u>

Brown was advised of his *Miranda* rights by Trooper Fratzke at approximately 8:50 a.m, and again about ten minutes later. Both times, Brown advised that he understood his rights. ISP agents met with Brown less than one hour later at the police station. Because Brown acknowledged that he understood his *Miranda* protections and waived them by agreeing to answer the agents' questions, his statements were voluntary.

---

[1] A free air sniff by a drug-detecting dog that reveals no information other than the location of narcotics is not considered a search, and thus does not implicate any separate Fourth Amendment concerns. *Illinois v. Caballes*, 125 S.Ct. 834, 837-38 (2005); *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000). So long as the defendant was not unlawfully detained when the dog sniff took place, the sniff was proper. *Id*. Even if the sniff could be considered a search under the Fourth Amendment, Fratzke obtained consent from the defendant to conduct an exterior sniff of the car with the dog.

9

WHEREFORE, the government respectfully requests that defendant Brown's Motion To Suppress Evidence be denied.

        Respectfully submitted,

        Rodger A. Heaton
        United States Attorney

BY:   /s/ Sara Darrow
       Sara Darrow
       Assistant United States Attorney
       1830 Second Avenue, Suite 320
       Rock Island, Illinois 61201
       Telephone (309) 793-5884

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2008, I electronically filed the foregoing Government's Response to Defendant's Motion to Suppress with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant: George Taseff.

        /s/ Sara Darrow
        Sara Darrow
        Assistant United States Attorney